IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAHEEM RAHMAN, # 302554 | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v | * | Civil Action No.  WMN-12-526 |
| | * | |
| BOBBY SHEARIN, Warden, | * | |
| CHAPLIN LAMP, | * | |
| | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM

Before the Court is self-represented plaintiff Raheem Rahman's ("Rahman") complaint under 42 U.S.C. § 1983.  Counsel for Defendants Bobby Shearin, Warden of the North Branch Correctional Institution ("NBCI") and Chaplin Kevin Lamp, have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 17) to which Rahman has filed an opposition (ECF No. 19).   The matter is ripe for disposition. After careful consideration of the pleadings, exhibits, and applicable law, the Court now rules pursuant to Local Rule 105.6 (D. Md. 2011), as a hearing is deemed unnecessary.  For reasons to follow, the Court will grant Defendants' Motion for Summary Judgment.

### PLAINTIFF'S CLAIMS

Rahman, an inmate at NBCI, claims 1) Chaplin Lamp ("Lamp") denied him his right to practice his Sunni Islam religion in violation of the First Amendment to the United States Constitution, and 2) Warden Shearin showed deliberate indifference to these actions. (ECF No. 1 at 7).  As redress, Rahman asks for $30,000 in damages.  *See id.*  Rahman faults Warden Shearin for denying his Administrative Remedy Procedure (ARP) request and for failing to hire an Islamic coordinator for the prison.

Rahman claims that during July of 2011, he was not permitted to participate in Friday Jumu'ah prayer services because Lamp removed him from the participant list with the excuse that Rahman is a participant in the Nation of Islam ("NOI") and not a Sunni. (ECF No. 1, Attachment). Rahman claims that he has always indicated his religion as Sunni and filed a change in religious preference form in August of 2011. *See id*. Rahman states he has never been a part of the Nation of Islam. Additionally, Rahman complains Chaplin Lamp prevented him from participating in the Ramadan fast during August of 2011.

## FACTS

Defendants have filed verified exhibits and affidavits in support of their responsive pleading which state that in July of 2011, the Inmate Date Manager Program listed Rahman's religious preference as Nation of Islam. (Ex. 2).[1] As a result of this information, Lamp did not place Rahman on the pass list for Sunni Islamic services. *See id.*

On July 18, 2011, Rahman filed an ARP complaining that he was not included in the Sunni religious count after his transfer from Housing Unit 2 to Housing Unit 4. (Ex. 3, A at 2). On August 2, 2011, Rahman filed a change of religious preference form changing his religious preference to Sunni Islam. (Ex. 2 at 1 ¶ 5, 3.)

Under Department of Correction regulations, inmates may change their religious preference six times per year. (Ex. 4, DCD 140-001 at 1-2). When an inmate requests a change of religious preference, the change does not become effective immediately. *See id*. Requests made by inmates in either July or August of 2011 went into effect in the first week of September of that year. *See id.* The reason for this policy is to allow prison chaplains sufficient time to submit the form to Case Management, to allow case managers adequate time to process the form, and to prevent inmates from changing their religious preference for solely social as opposed to

---

[1] All exhibits are at ECF No. 17 unless otherwise indicated.

religious reasons. (Ex. 5, Declaration of Stephanie Coates).  Rahman's change of religious preference went into effect in September of 2011, and he has been allowed to attend Sunni Religious services since then. (Ex. 2 at 2 ¶5).

Rahman filed two ARPs regarding the issues presented in this case. (Ex. 3).  His first, ARP number 2171 was dismissed after investigation found that Rahman had stated a religious preference of Nation of Islam, not Sunni. *Id*. at 2-4. Rahman did not allege he was missing Ramadan in ARP 2171-11.  *See id. at 2*.   His second ARP, number 2430-11, was dismissed as repetitive.  *See id*. at 6. Records indicate that Rahman did not appeal either decision to the Commissioner's Office. (Ex. 6 and 7).[2]

## DISCUSSION

### A.  Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *See id.* at 249.

---

[2]   Rahman has failed to exhaust his administrative remedy process.  The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § ] 1983 ... or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 8485 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007). Consequently, his claims can be dismissed for failure to exhaust administrative remedies.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party, s*ee Scott v. Harris*, 550 U.S. 372, 378 (2007), and abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *See Anderson*, 477 U.S. at 249–50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citations omitted).

### B.  Claims Against Warden Shearin

Rahman does not claim Warden Shearin ("Shearin") participated in the alleged denial of his civil rights; instead, he faults  him for not granting his ARP requests and not hiring an Islamic coordinator.  "[L]iability under § 1983 is conditioned on a showing of some personal involvement or participation in the denial of civil rights." *McAdoo v. Toll*, 591 F.Supp. 1399, 1404 (4th Cir. 1984). "In a § 1983 suit ... masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Igbal*, 556 U.S. 662, __, 129 S.Ct. 1937, 1949 (2009); *see Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999); *Powell v. Shopco Laurel Company*, 678 F.2d 504, 506 (4th Cir. 1982).

To establish supervisory liability under § 1983, a claimant must show 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to plaintiff; 2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) an affirmative causal link between the supervisor's inaction and the constitutional injury. *See Shaw v. Stroud*, 13 F.3d 791,799 (4th Cir. 1994).

Shearin's only involvement in this matter was in regard to his oversight of ARP proceedings. Investigating Rahman's ARP claims was an adequate response. The results of the investigation showed Rahman listed as an adherent of the Nation of Islam, and Shearin relied appropriately on the findings in his decision to deny the ARP claims. There was no denial of free exercise or religion or deliberate indifference to any offensive practice, nor did Shearin's actions cause Rahman to suffer any injury of constitutional dimension. Rahman's ARP requests did not present Shearin with actual or constructive knowledge that a subordinate engaged in conduct that posed a pervasive risk of constitutional injury to an inmate. In sum, when the facts are judged in the light most favorable to Rahman, it is clear no genuine issues of material fact are presented and Shearin is entitled to summary judgment in his favor as a matter of law.

To the extent Rahman seeks to hold Shearin culpable for not hiring an Islamic coordinator, he fails to state a constitutional claim. Inmates enjoy no constitutional right to dictate hiring decisions at correctional institutions. Rahman does not have a constitutional right to require the hiring of an Islamic coordinator at NBCI.

**C. Claims against Chaplin Lamp**

Section 3 of Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc–1 (a) provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.

Under RLUPIA, plaintiff has the burden of persuasion as to whether the government action substantially burdens his exercise of religious freedom. *See Adkins v. Kaspar*, 393 F.3d 559, 567 n. 32 (5th Cir.2004); *Civil Liberties for Urban Believers v. Chicago*, 342 F.3d 752, 760 (7th Cir. 2003). Once a substantial burden is established, the government bears the burden of persuasion that its practice is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. *See Adkins*, 393 F.3d at 567 n. 32. RLUIPA does not give prisoners an unfettered right to religious accommodation. Rather, the statute mandates "due deference to the experience and expertise of prison and jail administrators." *Lovelace v. Lee*, 472 F.3d 174, 210 (4th Cir.2006), quoting *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

Prior to RLUIPA, courts applied the First Amendment "deference" analysis found under *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987) and *Turner v. Safley*, 482 U.S. 78, (1987). These cases held that incarceration leads to a limitation on many rights and privileges as may be warranted by valid penological considerations, *see O'Lone*, 482 U.S. at 348, 352, and that a prisoner's right to free exercise of his religion must give way to regulations that are "reasonably related to legitimate penological interests." *Id*. at 349; *cf. Turner*, 482 U.S. at 89.

After reviewing the claims and facts in the light most beneficial to Rahman, the Court finds he has failed to meet his burden of persuasion. It is undisputed that when inmates enter the prison system they may declare a religious preference. Filing a change of religious preference form does not prevent inmates from attending their old religious preference until the new one

6

goes into effect. The reasons for the policy are to allow chaplains and case managers sufficient time to file and process religious preference change forms. The policy also discourages inmates from changing their religious preference solely for social reasons as opposed to legitimate religious motives. In this case, once the administrative requirements for processing Rahman's religious preference forms were completed, he was permitted to attend the prayer service of his choice.  Notably, Rahman does not allege his form was wrongfully delayed or processed differently than those of other inmates.

When Lamp checked the Inmate Data Manager in NBCI in July and August of 2011, Rahman's religious preference was listed as Nation of Islam.  On this basis, Lamp removed Rahman from the Sunni prayer service list.  Lamp's investigation of the ARP Rahman filed in July 2011 reflects this finding. Rahman's free exercise rights were not violated when the Inmate Data Manager Program showed that he was NOI and therefore was not permitted to participate in Sunni practices. [3]  Rahman fails to allege any facts to show any purposeful or reckless intent by Lamp to deny his free exercise of religion.  Even were this Court to assume Lamp was somehow mistaken about Rahman's religious affiliation, the facts shows Lamp's actions were made in good faith and in accordance with legitimate prison policy. Under these facts, no material facts are in dispute and the Court deems it appropriate to grant summary judgment in favor of Lamp.

## CONCLUSION

For these reasons, the Court will grant Defendants' Motion for Summary Judgment and enter judgment in their favor.   A separate Order follows.

<u>March 12, 2013</u>                                        _____/s/_____
Date                                                                 William M. Nickerson
                                                                          Senior United States District Judge

---

[3]  Rahman alleges no facts to substantiate his allegation that his religious preference has always been Sunni and not Nation of Islam.